# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JERRY MUHAMMAD, | ) | CASE NO. 5:16CV02286 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Jerry Muhammad ("Plaintiff"), challenges the final decision of Defendant, Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for preparation of a Report and Recommendation. For the reasons set forth below, it is recommended that the Commissioner's final decision be REVERSED and this matter REMANDED for further proceedings consistent with this Report and Recommendation.

---

[1]On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.

1

# I. PROCEDURAL HISTORY

In January 2012, Plaintiff filed applications for POD, DIB, and SSI, alleging a disability onset date of September 1, 2006.  (Transcript ("Tr.") 327).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 130, 140-47, 148-55).  On November 14, 2013, an ALJ held a hearing, during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 95-121).  On January 14, 2014, the ALJ issued a written decision finding Plaintiff was not disabled.  (Tr. 180-88).

Plaintiff sought review with the Appeals Council, and, on January 26, 2015, the case was remanded to the ALJ.  (Tr. 193-97).  On remand, after supplemental hearings held March 19 and May 27 of 2015, the ALJ issued an unfavorable decision on June 17, 2015.  (Tr. 19-40).  The ALJ's decision became final on July 27, 2016, when the Appeals Council declined further review.  (Tr. 1-18).

On September 14, 2016, Plaintiff filed his Complaint to challenge the Commissioner's final decision.  (Doc. No. 1).  The parties have completed briefing in this case.[2]  Plaintiff asserts

---

[2]     On January 19, 2017, Plaintiff *pro se* filed a one-page brief on the merits which claimed, without argument, that the ALJ's RFC assessment was erroneous. However, Plaintiff's brief included an attachment containing a brief prepared by prior counsel which had been submitted to the Appeals Council on February 10, 2016.  (Doc. No. 13-1).  The Commissioner filed her brief on the merits on March 7, 2017.  (Doc. No. 15).  On June 14, 2017, after it was determined that due to a docketing error, prior counsel's brief had not made accessible to the Commissioner, the Court ordered the Commissioner to file a responsive brief addressing the arguments contained in prior counsel's brief.  (Doc. No. 16).  The Commissioner timely filed her supplemental brief on June 14, 2017.  (Doc. No. 17).  In the pages that follow, the Court will address Plaintiff's claim that the RFC assessment was erroneous through the arguments raised by prior counsel.  (Doc.

2

the following assignments of error:

(1)     That the ALJ failed to follow the treating physician rule in formulating Plaintiff's residual functional capacity.

(2)     That the ALJ failed to follow the Appeals Council's directive to evaluate the claimant's obesity in accordance with Social Security Ruling 02-1p.

(3)     That the ALJ failed to properly weigh the opinions of the state agency physicians.

(Doc. No. 13-1).

## II. EVIDENCE

### A.      Personal and Vocational Evidence

Plaintiff was born March 7, 1959 and was 47 years-old at the time of his administrative hearing, making him a "younger" person under social security regulations.  (Tr. 31).  He has a high school education and is able to communicate in English.  *Id.*  He has no past relevant work.  (Tr. 31, 77).

### B.      Medical Evidence

In July 2006, an MRI of Plaintiff's left knee showed a tear in the posterior horn of the medial meniscus, mild areas of chondromalacia, and popliteal cyst.  (Tr. 567).  On numerous occasions from 2011 to 2013, Plaintiff presented to Glenn D. Blankenhorn, D.O., with a chief complaint of chronic pain.  (Tr. 722-28, 756-57, 765-79).  Plaintiff reported low-back pain and knee pain, with pain ratings generally between two and five out of ten, and, on two occasions, ten out of ten.  (Tr. 722-28, 756-57, 765-79).  Plaintiff also reported good analgesia, control, and maintenance of activity level, no adverse medication side effects, good adherence, good pain control, and reduction in knee pain.  (Tr. 723, 724, 725, 726).  He reported being active with his

Nos. 13, 15, 17).

church.  (Tr. 725).  In March 2012, Plaintiff advised that he had a lifting injury after moving materials for a flea market stand.  (Tr. 756).

Dr. Blankenhorn's examination findings included pleasant and cooperative demeanor and orientation to time place, and person (Tr. 722-728, 756-757, 767-779); negative straight leg raising (Tr. 756, 769, 777, 778); diminished deep tendon reflexes (Tr. 723); lumbar paraspinal tenderness and segmental restrictions (Tr. 724, 725, 727); antalgic gait, broad based and slow moving (Tr. 777); good muscular mass (Tr. 728); and positive grind Apley test and painful McMurray test, without click.  (Tr. 771, 772).  Diagnoses included chronic pain syndrome, degenerative joint and disc disease, internal derangement of the knee, history of ventral hernias, hypertension, and possible diversion.  (Tr. 722-728, 756-757, 767-779).  Treatments included medication and physical therapy.  (Tr. 724, 727).

In 2013 and 2014, Plaintiff underwent pain management for his back and left knee. (Tr. 780-846, 860-66, 868-70).  Plaintiff complained of constant aching pain made worse by bending, lifting, standing or sitting a long time, and using the stairs.  (Tr. 780).  Physical examination findings included tenderness to palpation in the low midline and low paraspinal muscles of the lumbar spine and extremely limited extension.  *Id.*  Plaintiff's left knee was enlarged and tender with crepitus.  *Id.*  Plaintiff had normal motor strength bilaterally and an antalgic gait.  (Tr. 781). Diagnoses included lumbago, myofacial or muscle pain, lumbar without myelopathy (osteoarthritis) and lower leg/knee pain.  *Id.*  Treatments included medications, physical therapy, use of a cane, and a TENS unit.  (Tr. 780-846, 860-66, 868-70).

In September 2013, after completing only two or three sessions, Plaintiff was discharged from physical therapy.  (Tr. 794).  He complained that the exercises hurt his back, and he asked

4

for a membership to the YMCA.  (Tr. 794).  In June 2014, after a confrontation with management staff, his provider noted that she was unable to complete the office visit due to Plaintiff's behavior, and he was discharged from pain management treatment.  (Tr. 868-70).

In 2014 and 2015, Plaintiff was treated by Frank Lazzerini, M.D., for complaints of low back pain.  During this period, Plaintiff at times reported that his medication, his TENS unit, and physical therapy were helping.  (Tr. 875, 877, 882, 884).  At other times, his pain interfered with his sleep and quality of life.  (Tr. 880, 882, 906).  Physical examination findings included normal motor strength and intact sensory exam in the upper and lower extremities; his gait and station were within normal limits.  (Tr. 880, 886, 906, 908).  But, tenderness to palpation over lumbar sacral spine was noted.  (Tr. 880, 886, 906, 908).  Spinal x-rays revealed degenerative disc disease.  (Tr. 910-11).  Diagnoses included degeneration of lumbar or lumbosacral intervertebral disc; lumbago; malaise and fatigue; and chronic pain syndrome.  (Tr. 873).  Plaintiff was treated with medication, physical therapy, a TENS unit.  (Tr. 876, 909, 912-21).

## C.    Opinion Evidence

In March 2012, Dr. Nick Albert, M.D., a state agency physician, reviewed the record evidence and opined that Plaintiff was capable of lifting 50 pounds occasionally, 25 pounds frequently; standing or walking about six hours in an eight-hour workday; and sitting about six hours in an eight-hour workday.  (Tr. 144, 152).  Dr. Albert also limited Plaintiff to using foot controls occasionally with the left lower extremity; occasionally climbing ramps and stairs; never climbing ladders, ropes or scaffolds; frequently stooping and occasionally kneeling, crouching and crawling; and should avoid concentrated exposure to extreme cold, wetness, and humidity  (Tr. 144-45, 152-53).  Dr. Albert indicated that the evidence from Plaintiff's alleged

onset date to his DLI, December 31, 20105 was insufficient to establish a severe physical

impairment. (Tr. 145, 153).  On reconsideration, Dr. William Bolz, M.D., another state agency

physician, reviewed the record evidence and concurred in Dr. Albert's opinion.  (Tr. 161-64,

170-73).

In April 2012, Dr. Blankenhorn assessed Plaintiff's abilities to perform work-related

activities.  (Tr. 765-66).  He opined that during an eight-hour work day Plaintiff could

occasionally lift and/or carry ten pounds; stand/walk for an hour but no more than ten minutes

without interruption; never climb, crawl, reach, or crouch; and occasionally balance or stoop.  He

also opined that Plaintiff's ability to push and pull were affected by his impairment and that he

had a number of environmental restrictions.  (Tr. 766).

In October 2014, Dr. Lazzerini completed a disability impairment questionnaire and

opined that Plaintiff was limited to sitting for less than one hour, standing and/or walking for less

than one hour, and lifting occasionally up to five pounds.  He further opined that Plaintiff would

be absent two to three times a month.  (Tr. 956-58).  In February 2015, Dr. Lazzerini submitted

another opinion with similar limitations.  (Tr. 923).

**D.     Hearing Testimony**

During the hearing, Plaintiff testified to the following:

- Plaintiff testified that he was the owner of a company, an LLC, but that his wife sold items at a flea market, did all of the work, and earned the income (Tr. 45-50, 64).

- Plaintiff testified that he filed individual tax returns but that his wife did not file a tax return. (Tr. 45-46, 51-52).

- Plaintiff denied telling Dr. Blankenhorn that he hurt himself moving items at the flea market. (Tr. 50-51)

The ALJ established that Plaintiff had no past relevant work, and he posed the following

hypothetical question to the VE:

> . . . [P]lease consider an individual born March 1959. The individual has a high school
> education under the regulations. For the first hypothetical, Mr. Holderead, the individual
> can lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently. This
> person can sit for six hours, stand and/or walk for six hours in a normal workday. This
> person cannot climb ladders, ropes, or scaffolds. This person can occasionally stoop,
> crouch, kneel, and crawl. This person must avoid workplace hazards, such as unprotected
> heights or exposure to dangerous moving machinery.

(Tr. 77)

The VE testified that the hypothetical individual would also be able to perform

representative jobs in the economy, such as dining room attendant, linen room attendant, and

labor (salvage).  (Tr. 78).

### III. STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the

time of disability and must prove an inability to engage "in substantial gainful activity by reason

of any medically determinable physical or mental impairment," or combination of impairments,

that can be expected to "result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and

404.1505(a).1

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when

he became disabled; and (3) he filed while he/she was disabled or within twelve months of the

date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905;

*Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a

7

claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience.  *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

8

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.  The claimant has not engaged in substantial gainful activity since September 1, 2006, the alleged onset date (20 CFR 404.1571 et seq.,and 416.971 et seq.).

3.  The claimant has the following severe impairments: degenerative joint disease of the left knee, hypertension and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he is limited to no climbing of ladders, ropes or scaffolds. He can occasionally stoop, crouch, kneel and crawl. He should avoid workplace hazards such as unprotected heights or dangerous moving machinery.

6.  The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on March 7, 1959 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been wider a disability, as defmed in the Social Security Act, from September 1,2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-33).

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of*

10

*Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

11

# VI. ANALYSIS

## A.    Treating Physician Rule

Plaintiff maintains that the ALJ failed to state good reasons for discounting the opinions of Plaintiff's treating physicians.  Upon review of the administrative decision, the Court agrees and concludes that the ALJ failed to sufficiently describe his reasons for affording little weight to the opinions of Plaintiff's treating physicians, Dr. Blankenhorn and Dr. Lazzerini.

A treating source opinion must be given "controlling weight" if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2).[3]   However, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9).  Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  *Blakley*, 581 F.3d at 408.[4]

_____

[3]    Revised versions of these regulations took effect on March 27, 2017 and apply to disability claims filed on or after that date.  *See* 82 Fed. Reg. 5844 (March 27, 2017).

[4]    Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5); *See also Gayheart*, 710 F.3d at 376.  The purpose of this requirement is two-fold.  First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.  Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.[5]

---

decision. *See also Gayheart*, 710 F.3d at 376 ("If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.,* as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).")

[5]    "On the other hand, opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not

13

In the present case, Dr. Blankenhorn opined that Plaintiff had limitations that included lifting and carrying ten pounds occasionally, standing/walking no more than five minutes without interruption, and postural and environmental restrictions.  (Tr. 765-66).  Dr. Lazzerini opined that Plaintiff had limitations including sitting for less than one hour, standing and/or walking for less than one hour, and lifting occasionally up to five pounds, and would be absent two to three times a month.  (Tr. 956-58).  In February 2015, Dr. Lazzerini submitted another opinion with similar limitations.  (Tr. 923).

The ALJ addressed Dr. Blankenhorn's and Dr. Lazzerini's respective opinions separately, but he afforded both opinions little weight for precisely the same reason, i.e., "because [the opinions are] not supported by the medical evidence of record, which showed only conservative treatment, moderate findings, noncompliance with various forms of treatment and post onset work activity.  (Tr. 30).  While there may be substantial evidence on the record to support this conclusion, the Court finds that the four grounds stated in support of that conclusion are not "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242.

As a general matter, the Sixth Circuit has established that an ALJ's conclusory and unexplained statement that a treating physician opinion unsupported by the medical evidence of record, does not constitute a "good reason" for rejecting the opinions.  *See Rogers v. Comm'r of*

---

deemed controlling. 20 C.F.R. § 404.1527(c). Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion. *Id*. § 404.1527(c)(6)."  *Gayheart*, 710 F.3d at 376.

14

*Soc. Sec.*, 486 F.3d 234, 245–46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons"

for rejecting the limitations contained in a treating source's opinion where the ALJ merely

stated, without explanation, that the evidence of record did not support the severity of said

limitations). Here, while the ALJ provided four grounds for discounting the treating physician

opinions, he provides no reasoned explanation that would draw a clear connection between the

evidence of record and his conclusion that Drs. Blankenhorn's and Lazzerini's opinions deserved

little weight.  The ALJ's single sentence analysis provides no specific reference to the record

such that this Court might fairly and adequately consider whether the substantive basis of the

ALJ's conclusion was reasonable.

　　With respect to each individual ground, the Court begins with the ALJ's assertion that the

"medical evidence of record . . . showed . . . only moderate findings."  One problem here is that

the ALJ did not spell out what he meant by "moderate findings," and he cited no example of any

"moderate finding" in the record.  While perhaps the ALJ meant that the record evidence shows

that Plaintiff's medical conditions are of merely moderate severity, he did not say this precisely,

and, without any citation to record to support his reference to only "moderate findings" the ALJ

has failed to establish the requisite logical bridge between the evidence and his conclusion.

　　Further, although the ALJ engaged in a recitation of the medical evidence earlier in his

decision, it is not self-evident that the "medical evidence of record" as described by the ALJ

showed "only moderate findings."  *Blackburn v. Colvin*, 2013 WL 3967282 at * 7 (N.D. Ohio

July 31, 2013) (an ALJ's recitation of the medical evidence "does not cure the failure to offer

any meaningful analysis as to why the opinions of treating physicians were rejected.").  On the

Court's review of the record, it is evident that from July of 2006 through 2014 Plaintiff had

15

ongoing issues with his back and his left knee.  For example, in 2006, an MRI of the knee

showed a tear in the posterior horn of the medial meniscus, with mild areas of cartilage edema

along the patella and a 3.5 cm. diameter lobulated popliteal cyst medially and posteriorly.  (Tr.

567).  Treatment notes from 2011 show effusion on the left knee with a positive Apley grind test.

(Tr. 728).  In February of 2012, Plaintiff complained of back and left knee pain with a pain rating

of 7/10. (Tr. 748).  A physical exam again revealed a positive Apley's grind test and painful

McMurray tests.  At the end of 2012, plaintiff complained of increased pain and exhibited an

antalgic, broad-based and slow moving gait.  (Tr. 777).  A July 2013 treatment note shows

crepitus in the left knee, though this time without tenderness and with normal range of motion.

(Tr. 786).  In September 2013 and March of 2014, Plaintiff complained of knee and back pain,

and the pain management doctor observed his left knee was enlarged and tender with crepitus.

(Tr. 780).  This evidence is clearly relevant to the supportability of the treating physician

opinions in this case, but the ALJ made no effort to address it in the context of the supportability

of the opinions.  In the Court's view, to simply say the evidence showed only "moderate

findings" is an oversimplification of the medical evidence, which precludes any meaningful

review by this Court.

The ALJ's unexplained conclusion that Plaintiff had only "moderate findings," appears to

be an instance of impermissibly "playing doctor."  Although an ALJ is free to consider

supportability and consistency in relation to a treating physician's opinion, an ALJ "may not

substitute his own medical judgment for that of the treating physician where the opinion of the

treating physician is supported by the medical evidence."  *Meece v. Barnhart*, 192 Fed.Appx.

456, 465 (6th Cir. 2006); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) (stating

16

"ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").  In this case, by characterizing the medical findings as "moderate," without any explanation or citation to the record, the ALJ appears to have impermissibly developed his own opinion of the medical evidence.

As for the ALJ's assertion that the "medical evidence . . . showed . . . noncompliance with various forms of treatment," again, the ALJ fails to cite any specific evidence from the record to demonstrate Plaintiff's noncompliance with what is implicitly referred to as multiple treatment recommendations.  In the recitation of medical evidence, the ALJ mentioned that Plaintiff "reported reluctance for some forms of treatment such as steroid injections." (Tr. 29).  According to the relevant treatment note, Plaintiff had "a relative who had a bad experience with back injections, so he is disinclined to consider such."  (Tr. 786).  It is not clear based on the administrative decision whether the ALJ viewed the noted "disinclination" as "noncompliance" or whether Plaintiff was otherwise noncompliant.  While it may be that substantial evidence exists that would support the ALJ's assertion that Plaintiff was noncompliant, the ALJ has not adequately articulated it, such that the Court may engage in an appropriate assessment of the ALJ's reasoning.  Further, on review of the record, it is evident that Plaintiff, at least fairly consistently, took his prescribed medication, used his TENS unit, and attended physical therapy. It is not evident that Plaintiff was "noncompliant" with any recommended treatment, and the ALJ failed to sufficiently explain his reasoning on this point.

The ALJ's assertion that "the medical evidence of record ... showed ... only conservative treatment" is similarly unsubstantiated.  While the Sixth Circuit has recognized that a claimant's course of conservative treatment record may amount to a "good reason" to discount a medical

opinion, *Kepke v. Comm'r of Soc. Sec.*, 636 Fed.Appx. 625, 631 (6th Cir. 2016), the absence of any discussion of the record evidence in relation to this issue prevents meaningful review.  The ALJ's opinion offers no insight as to whether any more aggressive treatment was available or recommended by Plaintiff's physicians.  Further, it is an oversimplification to say Plaintiff only had conservative treatment, as Plaintiff underwent numerous treatment modalities including medication, physical therapy, use of a TENS unit for three hours a day, chiropractic therapy, and use of a cane.

Finally, ALJ's assertion that evidence of post-onset work activity undermines the treating physician opinion's is similarly unexplained, as the ALJ failed to describe the evidence that might support the existence of post-onset work activity.  It is notable, however, that in an earlier section of the administrative decision, when determining whether Plaintiff had engaged in substantial gainful activity post-onset (which the ALJ concluded Plaintiff had not), the ALJ described evidence of self-employment earnings from a flea-market operation which Plaintiff claimed were earned by his wife.  While Plaintiff asserted he did none of the work, the ALJ noted that there was evidence that Plaintiff suffered an injury while carrying products for the flea market.  Based on this discussion, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity, but the ALJ noted that the evidence showed Plaintiff had the ability to work after the alleged onset date.  (Tr. 25).

While he does not say so precisely, it appears that the ALJ was referring to this evidence when he suggested that evidence of post-onset work activity undermined Plaintiff's treating physicians' opinions.  Nonetheless, assuming this is what the ALJ meant, his reasoning stands on shaky ground.  The ALJ concluded that this was evidence of Plaintiff's ability to work post-

18

onset. However, the Court finds this conclusion to be questionable given that Plaintiff injured himself in that instance. Evidence showing Plaintiff injured himself hardly demonstrates that he has the ability to work.

In sum, the Court concludes that the ALJ's single sentence explanation falls short of the articulation requirement of the treating physician rule. In such a situation, the Sixth Circuit has held that reversal and remand is required, even though "substantial evidence otherwise supports the decision of the Commissioner." *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 543–46 (6th Cir.2004). A failure to follow the procedural requirement "of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243; *see also Wilson* at 546 (a reviewing court "cannot excuse the denial of a mandatory procedural protection simply because ... there is sufficient evidence in the record of the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely").

**B.      Weighing of the Opinions of the State Agency Reviewers**

Next, Plaintiff argues that the ALJ erred when weighing the opinions of the state agency reviewers. Specifically, Plaintiff points out that there is a discrepancy between the opinions of the state agency reviewers and the RFC assigned by the ALJ. On the one hand, the ALJ concluded that Plaintiff was capable of medium work with *occasional* stooping; on the other hand, the state agency reviewers concluded that Plaintiff was capable of medium work with *frequent* stooping. Plaintiff notes that while the ALJ afforded great weight to the opinions of the

state agency reviewers, the assigned RFC deviated from those opinions.  Plaintiff suggests this is error because the ALJ failed to explain why this deviation was merited.

It bears noting that the error being claimed by Plaintiff is one that worked in his favor, since the state agency reviewers' opined limitations were less restrictive than those of the ALJ. As such, it was the view of the state agency reviewers that Plaintiff's capacity for work was greater than that to which the ALJ opined.  Thus, assuming the Court were to accept Plaintiff's argument and conclude that the ALJ should have adopted the opinions of the state agency reviewers, Plaintiff would be in a worse position than he was to start.

In any event, there is no requirement that an ALJ adopt any given opinion in its entirety, even when he affords that opinion great weight.  Under the regulations, an ALJ is empowered to make a disability determination after reviewing all relevant evidence that affects a claimant's ability to perform work activities.  20 C.F.R. 404.1520(a)(3), 404.1529.  Here, the ALJ did not commit reversible error when weighing the opinions of the state agency reviewers.

In addition, Plaintiff's criticisms of the ALJ's weighing of the state agency physicians' opinions are likely moot.  Given that this Court determined that the ALJ erred with respect to Plaintiff's treating physicians and, as discussed below, with respect to the consideration of Plaintiff's obesity, the ALJ may be required to reassess Plaintiff's RFC at step four on remand and, thus, reassess the weight to be afforded to the opinions of the state agency reviewers.

**C.      Obesity**

Plaintiff also argues that the ALJ failed to consider whether his obesity affected his ability to work, as required by SSR 02-1p and the Appeals Council's directive.  The Court agrees for the reasons that follow.  The Sixth Circuit has recognized that "an ALJ 'must consider the

20

claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation.'" *Shilo v. Comm'r of Social Security*, 600 Fed. Appx. 956, 958 (6th Cir. 2015) (quoting *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. 2009)).  *See also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834–835 (6th Cir. 2016).  As explained in SSR 02–01p, "[o]besity is a complex, chronic disease characterized by excessive accumulation of body fat."  SSR 02–01p, 2002 WL 34686281, at *2.  It must be considered throughout the ALJ's determinations, "including when assessing an individual's residual functional capacity," precisely because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  *Id.* at *1.

That being said, the Sixth Circuit has found that SSR 02–01p "does not mandate a particular mode of analysis of obesity."  *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411–412 (6th Cir. 2006); *See also Shilo*, 600 Fed. Appx. at 959; Miller, 811 F.3d at 835.  Rather, the Ruling "only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations."  *See Bledsoe*, 165 Fed. Appx. at 411–412 ("It is a mischaracterization to suggest that Social Security Ruling 02–01p offers any particular procedural mode of analysis for obese disability claimants.").  The Ruling details how a claimant's obesity will be considered at the various stages.  At step two, an ALJ is to "do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe."  2002 WL 34686281, at *4.  Regarding step three, the Ruling states: "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing" and "[w]e may also find that obesity, by itself, is medically equivalent to a listed impairment."  2002 WL 34686281, at *5.  As for step four, the Ruling provides: "As

with any other impairment, we will explain how we reached our conclusions on whether obesity

caused any physical or mental limitations." 2002 WL 34686281, at *7. The Ruling cautions,

however,

> will not make assumptions about the severity or functional effects of obesity combined
> with other impairments. Obesity in combination with another impairment may or may not
> increase the severity or functional limitations of the other impairment. We will evaluate
> each case based on the information in the case record.

2002 WL 34686281 at *6.

In this case, the Commissioner argues on several different grounds that the ALJ properly

considered Plaintiff's obesity.  First, she notes that on page 22 of the administrative decision, "the

ALJ specifically stated that he considered the effects of obesity on Plaintiff's ability to work

pursuant to SSR 02-01p."  Having carefully reviewed page 22 of the administrative decision, the

Court concludes that it does not say what the Commissioner says it does.  On the contrary, the

ALJ wrote:

> [The Appeals Council] also ordered the undersigned . . . to evaluate the claimant's
> obesity under Social Security Ruling 02-1p.

(Tr. 22) (emphasis added).

Based on this language, it is evident that the ALJ was aware of Plaintiff's obesity and

that he understood that he was required to consider it under the Ruling.  However, contrary to the

Commissioner's assertion, this language cannot reasonably be construed to mean that the ALJ

actually considered the effects of obesity on Plaintiff's ability to work.  *Norman v. Astrue*, 694 F.

Supp. 2d 738, 741 (N.D. Ohio 2010) (SSR 02-01p "is more than a requirement that the ALJ

mention the fact of obesity in passing: 'courts ... remand[ ] even for a mere failure to consider

obesity.'") (quoting *Macaulay v. Astrue*, 262 F.R.D. 381, 390 (D.Vt.2009)).

Further in support of her position, the Commissioner notes that "elsewhere in the decision the ALJ discussed treating records, which mentioned Plaintiff's obesity and diet counseling, as well as listened to Plaintiff's testimony about his weight at the hearing." (Doc. 17 at 8). The part of the decision to which the Commissioner refers is the recitation of the medical record at step four of the sequential evaluation. Specifically, referring to a treatment note dated April 24, 2014, the ALJ wrote: "With regard to the claimant's obesity, in June 2014, the claimant received counseling on diet as it affected his weight and hypertension." (Tr. 29 citing Tr. 853-54). Although the Commissioner is correct that the ALJ need not employ a "particular mode of analysis" when considering obesity, simply mentioning that one health care provider counseled Plaintiff on his diet is insufficient. *See Norman*, 693 F.Supp.2d at 741; *Sleight v. Comm'r of Soc. Sec.*, 896 F. Supp. 2d 622, 632 (E.D. Mich. 2012) (the fact that the ALJ was merely aware of claimant's obesity is insufficient to satisfy SSR 02-01p). Similarly, the fact that the ALJ heard Plaintiff's testimony as to his obesity only shows that the ALJ was aware of Plaintiff's obesity. It does not establish that the ALJ actually considered Plaintiff's obesity. *See id.*

Finally, the Commissioner contends SSR 02-01p is satisfied because the ALJ relied on the opinions of the state agency reviewers "who factored Plaintiff's weight into their analyses," and she points out that both state agency reviewers listed how much Plaintiff weighed. In support, the Commissioner relies on *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010), for the proposition that an ALJ properly considers the effect that obesity has on a claimant's ability to work by relying on the opinions of physicians took claimant's obesity into consideration. The Commissioner maintains that in the present case the ALJ properly considered Plaintiff's obesity pursuant to *Coldiron*.

23

The Court rejects the Commissioner's argument. First, the Commissioner does not accurately describe the holding in *Coldiron*, as she fails to mention that the decision did not turn merely on the ALJ's reliance on the opinions of physicians who had accounted for the claimant's obesity. As noted by the Sixth Circuit, there were several reasons why, in addition to relying on the physician opinions, that the Court concluded the ALJ properly considered the effect obesity had on the claimant's ability to work--namely, the ALJ discussed obesity multiple times throughout his findings of fact; he determined that the claimant appeared to limited by obesity and deconditioning, and he concluded that the claimant was morbidly obese.  Further, every single physician on whose opinions the ALJ relied, acknowledged the claimant's obesity.  For instance, one opinion noted the claimant's "extreme range of obesity"; another noted that the claimant's morbid obesity exacerbated his other conditions; a third discussed the claimant's morbid obesity throughout her findings; and a fourth recorded the claimant's weight at 335 pounds. *Coldiron*, 391 F. App'x at 443.

Unlike *Coldiron* and as discussed above, the ALJ in the present case did not discuss the effect that obesity had on Plaintiff's ability to work.  Further, the two state agency physicians on whose opinions the ALJ relied did not address it or even mention the word obesity.  Rather, the state agency reviewers simply listed Plaintiff's height and weight.  The Court rejects the Commissioner's suggestion that by listing height and weight, the reviewers effectively "accounted for limitations that Plaintiff's obesity might have on his ability to work." *Coldiron* cannot be read this expansively.  While one of the *Coldiron* physicians merely listed the claimant's weight, the Sixth Circuit gave no indication that this by itself was a sufficient accounting of the claimant's obesity limitations.  In *Coldiron*, not only did the ALJ explicitly

24

address Plaintiff's obesity, but "[e]very medical opinion that the ALJ evaluated acknowledged Coldiron's obesity."  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010). Here, that was not the case.

In sum, the ALJ failed to consider Plaintiff's obesity at each step of the sequential evaluation.  Accordingly, on remand the ALJ should properly consider the effects of Plaintiff's obesity on his ability to work pursuant to SSR 02-01p.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and this matter REMANDED for further proceedings consistent with this Report and Recommendation.

  */s/Jonathan D. Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

Date:  July 7, 2017

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**